IN THE CIRCUIT COURT OF LEFLORE COUNTY, MISSISSIPPI
FOURTH JUDICIAL DISTRICT

CHARLES E. EDWARDS, by and through
NEVONNIA TURNER, as Conservator
for the use and benefit of CHARLES E. EDWARDS,

      PLAINTIFF,

vs.

                              CAUSE NO. 2001-0172CF
                              Jury Demanded

MARINER POST-ACUTE NETWORK, INC.;
GEORGE D. MORGAN; M. SCOTT ATHANS;
J.D. LEE; CHARLIE R. SINCLAIR, JR.;
ANGELA M. WHITTINGTON; JOHN H. MERRELL;
JOHN DOES 1 THROUGH 10; and UNIDENTIFIED
ENTITIES 1 THROUGH 10;
(as to Greenwood Health & Rehabilitation Center
f/k/a Heritage Healthcare-Greenwood),

      DEFENDANTS.
_____/

## COMPLAINT

    COMES NOW the Plaintiff, NEVONNIA TURNER, as Conservator of CHARLES E.

EDWARDS, for the use and benefit of CHARLES E. EDWARDS, and by and through the

undersigned counsel, WILKES & MCHUGH, P.A., and for the cause of action against

Defendants, states and alleges:

### JURISDICTIONAL STATEMENT

    1.    NEVONNIA TURNER is the Conservator of CHARLES E. EDWARDS, and

brings this action for the use and benefit of CHARLES E. EDWARDS, and pursuant to

Mississippi law.

    2.    CHARLES E. EDWARDS was a resident of GREENWOOD HEALTH &

REHABILITATION CENTER f/k/a HERITAGE HEALTHCARE-GREENWOOD



EXHIBIT
"A"

12/7/01

("GREENWOOD HEALTH"), a skilled nursing facility located at 907 Highway 82 West, Greenwood, Leflore County, Mississippi, from December 1994 to Present.

3.  Defendant, MARINER POST-ACUTE NETWORK, INC., is a Delaware corporation with its principal place of business at One Ravinia Drive, Ste. 1500, Atlanta, GA 30346. At all times material to this lawsuit, Defendant, MARINER POST-ACUTE NETWORK, INC., has done business in Mississippi and continues to do business in Mississippi. Defendant's, MARINER POST-ACUTE NETWORK, INC., contacts with Mississippi are systematic and ongoing such that Defendant, MARINER POST-ACUTE NETWORK, INC., could reasonably expect to be haled into a Mississippi court. The agent for service for MARINER POST-ACUTE NETWORK, INC. is Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19808. MARINER POST-ACUTE NETWORK, INC. was and remains a corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment.

4.  Defendant, GEORGE D. MORGAN, was at all times material hereto the licensee of GREENWOOD HEALTH. GEORGE D. MORGAN is a resident citizen of the State of Georgia. Defendant, GEORGE D. MORGAN, for all times material to this lawsuit conducted business in Mississippi and continues to do business in Mississippi. Defendant's, GEORGE D. MORGAN, contacts with Mississippi are systematic and ongoing such that Defendant, GEORGE D. MORGAN, could reasonably expect to be haled into a Mississippi court.

5.  Defendant, M. SCOTT ATHANS, was at all times material hereto the licensee of GREENWOOD HEALTH. M. SCOTT ATHANS is a resident citizen of the State of New Mexico. Defendant, M. SCOTT ATHANS, for all times material to this lawsuit conducted

business in Mississippi and continues to do business in Mississippi. Defendant's, M. SCOTT ATHANS, contacts with Mississippi are systematic and ongoing such that Defendant, M. SCOTT ATHANS, could reasonably expect to be haled into a Mississippi court.

6.     Defendant, J. D. LEE, was at all times material hereto the licensee of GREENWOOD HEALTH. J. D. LEE is a resident citizen of the State of North Carolina. Defendant, J. D. LEE, for all times material to this lawsuit conducted business in Mississippi and continues to do business in Mississippi. Defendant's, J. D. LEE, contacts with Mississippi are systematic and ongoing such that Defendant, J. D. LEE, could reasonably expect to be haled into a Mississippi court.

7.     Defendant, CHARLIE R. SINCLAIR, JR., on information and belief, was the nursing home administrator for GREENWOOD HEALTH, on or about the dates of the occurrences which made the basis of this lawsuit and is a resident citizen of the State of Mississippi.

8.     Defendant, ANGELA M. WHITTINGTON, on information and belief, was the nursing home administrator for GREENWOOD HEALTH, on or about the dates of the occurrences which made the basis of this lawsuit and is a resident citizen of the State of Mississippi.

9.     Defendant, JOHN H. MERRELL, on information and belief, was the nursing home administrator for GREENWOOD HEALTH, on or about the dates of the occurrences which made the basis of this lawsuit and is a resident citizen of the State of Mississippi.

10.    Defendants John Does 1 through 10 are individuals who Plaintiff is unable to currently identify despite diligent efforts. Said Defendants are named pursuant to *Miss. R. Civ. P.* 9(h), insofar as their acts and/or omissions were negligent and/or otherwise tortious with respect to the care and treatment of CHARLES E. EDWARDS during his residency at GREENWOOD HEALTH. Alternatively, said Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions of others with respect to the care and treatment of CHARLES E. EDWARDS during his residency at GREENWOOD HEALTH.

11.    Defendants Unidentified Entities 1 through 10 are entities who Plaintiff is unable to currently identify despite diligent efforts. Said Defendants are named pursuant to *Miss. R. Civ. P.* 9(h), insofar as their acts and/or omissions were negligent and/or otherwise tortious with respect to the care and treatment of CHARLES E. EDWARDS during his residency at GREENWOOD HEALTH. Alternatively, said Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions of others with respect to the care and treatment of CHARLES E. EDWARDS during his residency at GREENWOOD HEALTH.

12.    MARINER POST-ACUTE NETWORK, INC. is a corporation that is protected under bankruptcy laws and an automatic stay, pursuant to 11 USC§362(a), regarding claims arising from December 1994 to January 18, 2000. Claims made against Defendant MARINER POST-ACUTE NETWORK, INC. are post-petition claims which arose after the filing of the bankruptcy petition and cover the period of January 19, 2000 to Present.

13.    At all times material hereto, Defendants owned, operated, managed and/or controlled, GREENWOOD HEALTH in Greenwood, Leflore County, Mississippi. The actions of each of GREENWOOD HEALTH's servants, agents and employees as set forth herein, are

imputed to MARINER POST-ACUTE NETWORK, INC.; GEORGE D. MORGAN; M. SCOTT ATHANS; J.D. LEE; CHARLIE R. SINCLAIR, JR.; ANGELA M. WHITTINGTON; JOHN H. MERRELL; and JOHN DOES 1 THROUGH 10.

14. Jurisdiction of this Court is proper in the Leflore County Circuit Court in that the amount in controversy, exclusive of interest and costs, far exceeds the minimum jurisdictional limits of this Court.

## FACTUAL SUMMARY

15. On or about December 1994, CHARLES E. EDWARDS at the age of 40 was admitted to GREENWOOD HEALTH, and he remains a resident of the nursing home.

16. Since infancy, CHARLES E. EDWARDS was no longer competent to handle his own affairs, due to severe mental retardation with autism and aphasia, and his cognitive skills were impaired. He no longer had the conscious awareness necessary to be able to fully comprehend all of the elements necessary to know that he had been the victim of nursing home negligence and resident rights violations.

17. Defendants were well aware of CHARLES E. EDWARDS' medical condition and the care that he required when they represented that they could adequately care for his needs.

18. Defendants held themselves out as being:

a) Skilled in the performance of nursing, rehabilitative and other medical support services;

b) Properly staffed, supervised, and equipped to meet the total needs of its nursing home residents;

c)   Able to specifically meet the total nursing home, medical, and physical therapy needs of CHARLES E. EDWARDS and other residents like him; and,

d)   Licensed and complying on a continual basis with all rules, regulations, and standards established for nursing homes, nursing home licensees and nursing home administrators.

19.   Defendants failed to discharge their obligations of care to CHARLES E. EDWARDS.   As a consequence thereof, CHARLES E. EDWARDS suffered catastrophic injuries, disfigurement, extreme pain, suffering and mental anguish.   The scope and severity of the recurrent wrongs inflicted upon CHARLES E. EDWARDS while under the care of the facility accelerated the deterioration of his health and physical condition beyond that caused by the normal aging process and resulted in physical and emotional trauma which includes, but is not limited to:

a)   pneumonia;

b)   malnutrition;

c)   dehydration;

d)   multiple falls;

e)   urinary tract infections;

f)   multiple bruises and skin tears;

g)   lacerations requiring stitches;

h)   numerous fecal impactions with related complications;

i)   peg site infections;

j)   kidney infections;

k)   poor hygiene;

l)  . . sepsis and other blood-borne infections;

m)  contractures;

n)  multiple pressure sores; and

o)  loss of weight.

20.  All of the above identified injuries, as well as the conduct specified below, caused CHARLES E. EDWARDS to lose his personal dignity and caused extreme and unnecessary pain, degradation, anguish, otherwise unnecessary hospitalizations, disfigurement, and emotional trauma.

21.  The wrongs complained of herein were of a continuing nature, and occurred throughout CHARLES E. EDWARDS' stay at Defendants' facility.

22.  Plaintiff alleges that on all of the occasions complained of herein, CHARLES E. EDWARDS was under the care, supervision, and treatment of the agents and/or employees of Defendants and that the injuries complained of herein were proximately caused by the acts and omissions of Defendants named herein.

23.  Defendants had vicarious liability for the acts and omissions of all persons or entities under Defendants' control, either directly or indirectly, including its employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools causing or contributing to the injuries of CHARLES E. EDWARDS.

24.  Defendants have joint and several liability for the actions complained of herein because they consciously and deliberately pursued a common plan or design to commit the tortious acts described in this Complaint and these Defendants actively took part in such actions.

## COUNT ONE: NEGLIGENCE AGAINST MARINER POST-ACUTE NETWORK, INC.; AND JOHN DOES 1 THROUGH 10

25.    This count is brought for post-petition claims accruing post the filing of a bankruptcy petition.

26.    The Plaintiff re-alleges and incorporates the allegations in paragraphs 1-24 as if set forth herein.

27.    Defendants owed a duty to residents, including CHARLES E. EDWARDS, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

28.    Defendants' employees owed a duty to residents, including CHARLES E. EDWARDS, to exercise reasonable care in providing care and services in a safe and beneficial manner.

29.    Defendants breached this duty by failing to deliver care and services that a reasonably careful person would have provided under similar circumstances and by failing to prevent the mistreatment, abuse and neglect of CHARLES E. EDWARDS.

30.    The negligence of the Defendants, their employees, agents and consultants, includes, but is not limited to, one or more of the following acts and omissions:

   a)    The failure to provide CHARLES E. EDWARDS with appropriate nutrition to prevent malnutrition;

   b)    The failure to provide CHARLES E. EDWARDS with adequate fluid intake to prevent dehydration;

8

c)　.. The failure to provide and ensure that CHARLES E. EDWARDS received adequate hygiene and sanitary care to prevent pressure sores and infections from developing and progressing;

d)　The failure to provide adequate turning and repositioning of CHARLES E. EDWARDS in order to provide pressure relief so as to prevent the formation of pressure sores on his body, contractures and infections;

e)　The failure to provide even the minimum number of staff necessary to assist the residents with their needs;

f)　The failure to provide adequate supervision for CHARLES E. EDWARDS to prevent him from falling and being injured by falls within the facility;

g)　The failure to properly assess CHARLES E. EDWARDS for the risk of falling;

h)　·· The failure to protect CHARLES E. EDWARDS from falling within the facility;

i)　The failure to protect CHARLES E. EDWARDS from harm within the facility;

j)　The failure to respond to significant signs and symptoms of change in the condition of CHARLES E. EDWARDS;

k)　The failure to develop, implement, and update an adequate and appropriate resident care plan to meet the needs of CHARLES E. EDWARDS;

l)　The failure to maintain appropriate records, including obvious failure to monitor and document significant changes in CHARLES E. EDWARDS' condition;

m) . . The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants, and medication aides (hereinafter "nursing personnel") to meet the total needs of CHARLES E. EDWARDS;

n) The failure to increase the number of personnel to ensure that CHARLES E. EDWARDS:

1) received timely and accurate care assessments;

2) received prescribed treatment, medication, and diet;

3) received necessary supervision; and

4) received timely intervention due to a significant change in condition.

o) The failure to provide nursing personnel sufficient in number to ensure that CHARLES E. EDWARDS attained and maintained his highest level of physical, mental and psychosocial well-being;

p) The failure to provide adequate supervision to the nursing staff so as to ensure that CHARLES E. EDWARDS received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments and medications, and sufficient nursing observation and examination of the responses, symptoms, and progress in the physical condition of CHARLES E. EDWARDS;

q) The failure to adequately assess, evaluate and supervise nursing personnel so as to ensure that CHARLES E. EDWARDS received appropriate nursing care, in accordance with Defendants' policy and procedures manual, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Office of Licensing and Certification;

r)  . . The failure to provide a nursing staff that was properly staffed, qualified, and trained;

s)  The failure to provide and ensure an adequate nursing care plan based on the needs of CHARLES E. EDWARDS;

t)  The failure to provide and ensure adequate nursing care plan revisions and modifications as the needs of CHARLES E. EDWARDS changed;

u)  The failure to implement and ensure that an adequate nursing care plan for CHARLES E. EDWARDS was followed by nursing personnel;

v)  The failure to adopt adequate guidelines, policies, and procedures for documenting, maintaining files, investigating, and responding to any complaint regarding the quantity of resident care, the quality of resident care, or misconduct by employees, irrespective of whether such complaint derived from a state survey agency, a resident of said facility, an employee of the facility or any interested person;

w)  The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

x)  The failure to provide CHARLES E. EDWARDS with adequate and appropriate observation and examination following an injury so as to timely and adequately provide appropriate emergency medical care;

y)  The failure to properly and timely notify CHARLES E. EDWARDS' attending physician significant changes in CHARLES E. EDWARDS' physical condition, to wit: the development of pressure sores, lesions, contractures, falls, lacerations, gastrointestinal bleeding, vomiting episodes, fecal impactions, malnutrition, weight loss, infections, and persistent, unresolved problems relating to the care and

physical condition of CHARLES E. EDWARDS resulting in needless hospitalization, and unnecessary pain, agony, and suffering on the part of CHARLES E. EDWARDS;

    z)    The failure to provide a safe environment;

    aa)    The failure to maintain medical records on CHARLES E. EDWARDS in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

        1)    the diagnosis of CHARLES E. EDWARDS;

        2)    the treatment of CHARLES E. EDWARDS; and

        3)    the assessment and establishment of appropriate care plans of care and treatment.

    bb)    The failure to adequately and appropriately monitor CHARLES E. EDWARDS and recognize significant changes in his health status;

    cc)    The failure to prevent CHARLES E. EDWARDS from developing multiple urinary tract infections;

    dd)    The failure to prevent CHARLES E. EDWARDS from developing kidney and peg site infections;

    ee)    The failure to prevent CHARLES E. EDWARDS from developing numerous fecal impaction, requiring medical assistance for relief; and

    ff)    The failure to prevent CHARLES E. EDWARDS' personal items from being lost and/or stolen.

31.    A reasonably careful nursing home and nursing home licensee, operating under similar circumstances, would foresee that the failure to provide the ordinary care listed above

would result in devastating injuries to CHARLES E. EDWARDS.

32.     As a direct and proximate result of the negligence of Defendants as set out above, CHARLES E. EDWARDS, suffered injuries, including falls, lacerations, dehydration, malnutrition, weight loss, urinary tract infections, kidney infections, fecal impaction, sepsis, pneumonia, pressure sores, contractures, infections, and also suffered extreme pain, suffering, mental anguish, embarrassment, and fright, all of which required hospitalization and medical treatment, and all of which required CHARLES E. EDWARDS to incur significant hospital and medical expenses.

33.     WHEREFORE, based on such conduct of Defendants as set forth above, Plaintiff asserts a claim for judgment for all compensatory damages and punitive damages against Defendants including, but not limited to, medical expenses, physical pain, suffering, mental anguish, disability, loss of enjoyment of life, humiliation, disfigurement and fright in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT TWO: NEGLIGENCE AGAINST GEORGE D. MORGAN; M. SCOTT ATHANS; J. D. LEE; AND JOHN DOES 1 THROUGH 10

34.     The Plaintiff re-alleges and incorporates the allegations in paragraphs 1-24 as if set forth herein.

35.     Defendants owed a duty to residents, including CHARLES E. EDWARDS, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

36.     Defendants' employees owed a duty to residents, including CHARLES E. EDWARDS, to exercise reasonable care in providing care and services in a safe and beneficial manner.

37.     Defendants breached this duty by failing to deliver care and services that a reasonably careful person would have provided under similar circumstances and by failing to prevent the mistreatment, abuse and neglect of CHARLES E. EDWARDS.

38.     The negligence of the Defendants, their employees, agents and consultants, includes, but is not limited to, one or more of the following acts and omissions:

a)     The failure to provide CHARLES E. EDWARDS with appropriate nutrition to prevent malnutrition;

b)     The failure to provide CHARLES E. EDWARDS with adequate fluid intake to prevent dehydration;

c)     The failure to provide and ensure that CHARLES E. EDWARDS received adequate hygiene and sanitary care to prevent pressure sores and infections from developing and progressing;

d)     The failure to provide adequate turning and repositioning of CHARLES E. EDWARDS in order to provide pressure relief so as to prevent the formation of pressure sores on his body, contractures and infections;

e)     The failure to provide even the minimum number of staff necessary to assist the residents with their needs;

14

f) . The failure to provide adequate supervision for CHARLES E. EDWARDS to prevent him from falling and being injured by falls within the facility;

g) The failure to properly assess CHARLES E. EDWARDS for the risk of falling;

h) The failure to protect CHARLES E. EDWARDS from falling within the facility;

i) The failure to protect CHARLES E. EDWARDS from harm within the facility;

j) The failure to respond to significant signs and symptoms of change in the condition of CHARLES E. EDWARDS;

k) The failure to develop, implement, and update an adequate and appropriate resident care plan to meet the needs of CHARLES E. EDWARDS;

l) The failure to maintain appropriate records, including obvious failure to monitor and document significant changes in CHARLES E. EDWARDS' condition;

m) The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants, and medication aides (hereinafter "nursing personnel") to meet the total needs of CHARLES E. EDWARDS;

n) The failure to increase the number of personnel to ensure that CHARLES E. EDWARDS:

    1) received timely and accurate care assessments;

    2) received prescribed treatment, medication, and diet;

    3) received necessary supervision; and

    4) received timely intervention due to a significant change in

condition.

o)     The failure to provide nursing personnel sufficient in number to ensure that CHARLES E. EDWARDS attained and maintained his highest level of physical, mental and psychosocial well-being;

p)     The failure to provide adequate supervision to the nursing staff so as to ensure that CHARLES E. EDWARDS received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments and medications, and sufficient nursing observation and examination of the responses, symptoms, and progress in the physical condition of CHARLES E. EDWARDS;

q)     The failure to adequately assess, evaluate and supervise nursing personnel so as to ensure that CHARLES E. EDWARDS received appropriate nursing care, in accordance with Defendants' policy and procedures manual, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Office of Licensing and Certification;

r)     The failure to provide a nursing staff that was properly staffed, qualified, and trained;

s)     The failure to provide and ensure an adequate nursing care plan based on the needs of CHARLES E. EDWARDS;

t)     The failure to provide and ensure adequate nursing care plan revisions and modifications as the needs of CHARLES E. EDWARDS changed;

u)     The failure to implement and ensure that an adequate nursing care plan for CHARLES E. EDWARDS was followed by nursing personnel;

v)　　The failure to adopt adequate guidelines, policies, and procedures for documenting, maintaining files, investigating, and responding to any complaint regarding the quantity of resident care, the quality of resident care, or misconduct by employees, irrespective of whether such complaint derived from a state survey agency, a resident of said facility, an employee of the facility or any interested person;

w)　　The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

x)　　The failure to provide CHARLES E. EDWARDS with adequate and appropriate observation and examination following an injury so as to timely and adequately provide appropriate emergency medical care;

y)　　The failure to properly and timely notify CHARLES E. EDWARDS' attending physician significant changes in CHARLES E. EDWARDS' physical condition, to wit: the development of pressure sores, lesions, contractures, falls, lacerations, gastrointestinal bleeding, vomiting episodes, fecal impactions, malnutrition, weight loss, infections, and persistent, unresolved problems relating to the care and physical condition of CHARLES E. EDWARDS resulting in needless hospitalization, and unnecessary pain, agony, and suffering on the part of CHARLES E. EDWARDS;

z)　　The failure to provide a safe environment;

aa)　　The failure to maintain medical records on CHARLES E. EDWARDS in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

17

1)    the diagnosis of CHARLES E. EDWARDS;

2)    the treatment of CHARLES E. EDWARDS; and

3)    the assessment and establishment of appropriate care plans of care

and treatment.

bb)    The failure to adequately and appropriately monitor CHARLES E. EDWARDS and recognize significant changes in his health status;

cc)    The failure to prevent CHARLES E. EDWARDS from developing multiple urinary tract infections;

dd)    The failure to prevent CHARLES E. EDWARDS from developing kidney and peg site infections;

ee)    The failure to prevent CHARLES E. EDWARDS from developing numerous fecal impaction, requiring medical assistance for relief; and

ff)    The failure to prevent CHARLES E. EDWARDS' personal items from being lost and/or stolen.

39.    A reasonably careful nursing home and nursing home licensee, operating under similar circumstances, would foresee that the failure to provide the ordinary care listed above would result in devastating injuries to CHARLES E. EDWARDS.

40.    As a direct and proximate result of the negligence of Defendants as set out above, CHARLES E. EDWARDS suffered injuries, including falls, lacerations, dehydration, malnutrition, weight loss, urinary tract infections, kidney infections, fecal impaction, sepsis, pneumonia, pressure sores, contractures, infections, and also suffered extreme pain, suffering, mental anguish, embarrassment, and fright, all of which required hospitalization and medical treatment, and all of which required CHARLES E. EDWARDS to incur significant hospital and

medical expenses.

41.    WHEREFORE, based on such conduct of Defendants as set forth above, Plaintiff asserts a claim for judgment for all compensatory damages and punitive damages against Defendants including, but not limited to, medical expenses, physical pain, suffering, mental anguish, disability, loss of enjoyment of life, humiliation, disfigurement and fright in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT THREE: NEGLIGENCE CLAIM AGAINST DEFENDANTS, CHARLIE R. SINCLAIR, JR., ANGELA M. WHITTINGTON, JOHN H. MERRELL, AND JOHN DOES 1 THROUGH 10

42.    The Plaintiff re-alleges and incorporates the allegations in paragraphs 1-24 as if set forth herein.

43.    At times material to this suit, Defendants, CHARLIE R. SINCLAIR, JR., ANGELA M. WHITTINGTON, JOHN H. MERRELL, and JOHN DOES 1 THROUGH 10, were licensed as nursing home administrators by the Mississippi Board of Licensure for Nursing Home Administrators.  As licensed nursing home administrators, Defendants, CHARLIE R. SINCLAIR, JR., ANGELA M. WHITTINGTON, JOHN H. MERRELL, and JOHN DOES 1 THROUGH 10, were responsible for performing the acts of management, supervision, and generally in charge of nursing homes.

44.    At times material to this suit, Defendants, CHARLIE R. SINCLAIR, JR., ANGELA M. WHITTINGTON, JOHN H. MERRELL, and JOHN DOES 1 THROUGH 10, were the licensed nursing home administrators of GREENWOOD HEALTH, and were responsible for performing the acts of management, supervision, and generally in charge of said facility.

45.    The acts or omissions set forth above are matters which were within Defendants', CHARLIE R. SINCLAIR, JR., ANGELA M. WHITTINGTON, JOHN H. MERRELL, and JOHN

DOES 1 THROUGH 10, areas of responsibility. More specifically, Defendants, CHARLIE R. SINCLAIR, JR., ANGELA M. WHITTINGTON, JOHN H. MERRELL, and JOHN DOES 1 THROUGH 10, were negligent in at least the following particulars:

a)   the failure to hire an adequate amount of nursing personnel and other agents and employees of said facility, that were also qualified, to assure that CHARLES E. EDWARDS received adequate care, treatment, and services, in accordance with the mandates set forth in State laws, and in the nursing home policy and procedure manual;

b)   the failure to adequately supervise the nursing personnel and other agents and employees of said facility to assure that CHARLES E. EDWARDS received adequate care, treatment, and services, in accordance with the mandates set forth in State laws, and in the nursing home policy and procedure manual;

c)   the failure to adequately train the nursing personnel and other agents and employees of said facility to assure that CHARLES E. EDWARDS received adequate care, treatment, and services, in accordance with the mandates set forth in State laws, and in the nursing home policy and procedure manual; and

d)   the failure to ensure that adequate records were prepared and maintained to assure that CHARLES E. EDWARDS received adequate care, treatment, and services, in accordance with the mandates set forth in State laws, and in the nursing home policy and procedure manual.

46.   As a direct and proximate result of Defendants', CHARLIE R. SINCLAIR, JR., ANGELA M. WHITTINGTON, JOHN H. MERRELL, and JOHN DOES 1 THROUGH 10, failure to perform their responsibilities as set forth above, CHARLES E. EDWARDS suffered injuries, including falls, lacerations, dehydration, malnutrition, weight loss, urinary tract infections,

kidney infections, fecal impaction, sepsis, pneumonia, pressure sores, contractures, infections, and also suffered extreme pain, suffering, mental anguish, embarrassment, disfigurement and fright, all of which required hospitalization and medical treatment, and all of which required CHARLES E. EDWARDS to incur significant hospital and medical expenses.

47.     WHEREFORE, based on such conduct of Defendants as set out above, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Defendants including, but not limited to, medical expenses, physical pain, suffering, mental anguish, disability, loss of enjoyment of life, humiliation, disfigurement and fright in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT FOUR: MEDICAL MALPRACTICE AGAINST MARINER POST-ACUTE NETWORK, INC. AND JOHN DOES 1 THROUGH 10

48.     This count is brought for post-petition claims accruing post the filing of a bankruptcy petition.

49.     Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1-24 as if fully set forth herein.

50.     Defendants owed a duty to residents, including CHARLES E. EDWARDS, to hire, train, and supervise employees so that such employees delivered care and services to residents in a safe and beneficial manner.

51.     Defendants' employees owed a duty to residents, including CHARLES E. EDWARDS, to render care and services as a reasonably prudent and similarly situated nursing home employee would render, including, but not limited to, rendering care and services in a safe and beneficial manner.

52.     Defendants owed a duty to assist all residents, including CHARLES E. EDWARDS, in attaining and maintaining the highest level of physical, mental, and psychosocial well-being.

53.     Defendants failed to meet the standard of care and violated its duty of care to CHARLES E. EDWARDS through mistreatment, abuse and neglect.   The negligence of Defendants, their employees, and consultants, includes, but is not limited to, one or more of the following acts and omissions:

b)      The failure to properly notify a doctor upon significant changes in CHARLES E. EDWARDS' condition;

c)      The failure to provide adequate therapeutic and rehabilitative services to maintain CHARLES E. EDWARDS' mobility and range of motion and to prevent contractures;

d)      The failure to respond to significant signs and symptoms of change in the condition of CHARLES E. EDWARDS;

e)      The failure to adequately and timely assess, monitor and/or treat the development and progression of pressure sores and infection in CHARLES E. EDWARDS;

f)      The failure to provide proper custodial care, and wound care and to prescribe and administer proper medication to prevent CHARLES E. EDWARDS' existing medical conditions to worsen to the point of becoming life-threatening;

g)      The failure to properly assess CHARLES E. EDWARDS for the risk of development of pressure sores and infections;

h)     The failure to properly assess CHARLES E. EDWARDS for the risk of falling;

i)     The failure to provide adequate supervision for CHARLES E. EDWARDS to prevent him from falling within the facility;

j)     The failure to protect CHARLES E. EDWARDS from falling within the facility;

k)     The failure to develop, implement, and update an adequate and appropriate resident care plan to meet the needs of CHARLES E. EDWARDS;

l)     The failure to maintain appropriate records, including obvious failure to monitor and document significant changes in CHARLES E. EDWARDS' condition;

m)     The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants, and medication aides (hereinafter "nursing personnel") to meet the total needs of CHARLES E. EDWARDS;

n)     The failure to increase the number of nursing personnel to ensure that CHARLES E. EDWARDS:

1.     received timely and accurate care assessments;

2.     received prescribed treatment, medication, and diet;

3.     received necessary supervision; and

4.     received timely nursing and medical intervention due to a significant change in condition;

o)     The failure to provide nursing personnel sufficient in number to provide proper treatment and assessment to CHARLES E. EDWARDS and other residents in order to protect CHARLES E. EDWARDS' skin integrity and to prevent the formation of

pressure sores, lesions, contractures, and infections;

p)      The failure to provide nursing personnel sufficient in number to ensure that CHARLES E. EDWARDS attained and maintained his highest level of physical, mental and psychosocial well-being;

q)      The failure to provide adequate supervision to the nursing staff so as to ensure that CHARLES E. EDWARDS received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments, medications, and skin care to prevent the formation of pressure sores and lesions, to prevent contractures and infection, and sufficient nursing observation and examination of the responses, symptoms, and progress in the physical condition of CHARLES E. EDWARDS;

r)      The failure to adequately assess, evaluate, and supervise nursing personnel so as to ensure the CHARLES E. EDWARDS received appropriate nursing care, in accordance with Defendants' policy and procedures manual, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Office of Licensing and Certification;

s)      The failure to provide a nursing staff that was properly staffed, qualified, and trained;

t)      The failure to provide and ensure an adequate nursing care plan based on the needs of CHARLES E. EDWARDS;

u)      The failure to provide and ensure adequate nursing care plan revisions and modifications as the needs of CHARLES E. EDWARDS changed;

24

v)  . The failure to implement and ensure that an adequate nursing care plan for CHARLES E. EDWARDS was followed by nursing personnel;

v)  The failure to adopt adequate guidelines, policies, and procedures for documenting, maintaining files, investigating, and responding to any complaint regarding the quantity of resident care, the quality of resident care, or misconduct by employees, irrespective of whether such complaint derived from a state survey agency, a resident of said facility, an employee of the facility or any interested person;

w)  The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

x)  The failure to provide CHARLES E. EDWARDS with adequate and appropriate observation and examination following an injury so as to timely and adequately provide appropriate emergency medical care;

y)  The failure to properly assess CHARLES E. EDWARDS for the risk of development of pressure sores, skin tears, bruises, lesions, contractures, and infection;

z)  The failure to provide a proper mattress and bedding for CHARLES E. EDWARDS, protective devices and pressure relief devices;

aa)  The failure to provide CHARLES E. EDWARDS with adequate and appropriate wound care, including timely dressing changes, so as to prevent the aggravation and deterioration of pressure sores and lesions on his body;

bb)    The failure to provide CHARLES E. EDWARDS with adequate and appropriate observation and examination for skin breakdown so as to timely and adequately intervene to prevent the formation of ulcerated, pus-infiltrated, festering, and necrotic sores and lesions on his body;

cc)    The failure to provide CHARLES E. EDWARDS with adequate and appropriate care so as to prevent the development, aggravation and progression of infection;

dd)    The failure to provide CHARLES E. EDWARDS with adequate and appropriate observation and examination so as to timely and adequately intervene to prevent the development, aggravation and progression of infection;

ee)    The failure to provide CHARLES E. EDWARDS with adequate and appropriate nursing care, treatments and medication for pressure sores after development over the body of CHARLES E. EDWARDS;

ff)    The failure to provide CHARLES E. EDWARDS with adequate and appropriate nursing care, treatments and medication for infection after the development of infection in the body of CHARLES E. EDWARDS;

gg)    The failure to provide care, treatment, and medication in accordance with physician's orders;

hh)    The failure to properly and timely notify CHARLES E. EDWARDS' attending physician significant changes in CHARLES E. EDWARDS' physical condition, to wit:   the development of pressure sores, lesions, contractures, falls,

lacerations, gastrointestinal bleeding, vomiting episodes, fecal impactions, malnutrition, weight loss, infections, and persistent, unresolved problems relating to the care and physical condition of CHARLES E. EDWARDS resulting in needless hospitalization, and unnecessary pain, agony, and suffering on the part of CHARLES E. EDWARDS;

ii)     The failure to provide CHARLES E. EDWARDS with adequate and appropriate assessment for fluid management to prevent dehydration;

jj)     The failure to maintain an adequate and appropriate fluid maintenance program;

kk)     The failure to ensure that CHARLES E. EDWARDS received adequate assessment of his nutritional needs;

ll)     The failure to provide a safe environment;

mm)     The failure to maintain medical records on CHARLES E. EDWARDS in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

1.     the diagnosis of CHARLES E. EDWARDS;

2.     the treatment of CHARLES E. EDWARDS; and

3.     the assessment and establishment of appropriate care plans of care and treatment;

nn)     The failure to adequately and appropriately monitor CHARLES E. EDWARDS and recognize significant changes in his health status;

oo) The failure to prevent CHARLES E. EDWARDS' personal items from being lost and/or stolen;

pp) The failure to properly notify the family of CHARLES E. EDWARDS of significant changes in his health status; and

qq) The failure to provide and perform adequate range of motion exercises and therapy to prevent contractures which resulted in excruciating pain and horrible disfigurement to CHARLES E. EDWARDS.

54. A reasonably prudent nursing home, nursing home licensee or nursing home administrator, operating under the same or similar conditions, would not have failed to provide the care listed in the above complaint. Each of the foregoing acts of negligence on the part of Defendants was a proximate cause of CHARLES E. EDWARDS' injuries. CHARLES E. EDWARDS' injuries were all foreseeable to Defendants.

55. Defendants' conduct in breaching the duties owed to CHARLES E. EDWARDS was negligent, grossly negligent, willful, wanton, malicious and reckless.

56. As a direct and proximate result of such negligent, grossly negligent, willful, wanton, reckless and malicious conduct, CHARLES E. EDWARDS suffered injuries, including falls, lacerations, dehydration, malnutrition, weight loss, urinary tract infections, kidney infections, fecal impaction, sepsis, pneumonia, pressure sores, contractures, infections, and also suffered extreme pain, suffering, mental anguish, embarrassment, and fright, all of which required hospitalization and medical treatment, and all of which required CHARLES E. EDWARDS to incur significant hospital and medical expenses.

57.    WHEREFORE, based on such conduct of Defendants as set forth above, Plaintiff asserts a claim for judgment for all compensatory damages and punitive damages against Defendants including, but not limited to, medical expenses, physical pain, suffering, mental anguish, disability, disfigurement, loss of enjoyment of life, humiliation, and fright in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT FIVE: MEDICAL MALPRACTICE AGAINST GEORGE D. MORGAN; M. SCOTT ATHANS; J.D. LEE; CHARLIE R. SINCLAIR, JR.; ANGELA M. WHITTINGTON; JOHN H. MERRELL; AND JOHN DOES 1 THROUGH 10

58.    Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1-24 as if fully set forth herein.

59.    Defendants owed a duty to residents, including CHARLES E. EDWARDS, to hire, train, and supervise employees so that such employees delivered care and services to residents in a safe and beneficial manner.

60.    Defendants' employees owed a duty to residents, including CHARLES E. EDWARDS, to render care and services as a reasonably prudent and similarly situated nursing home employee would render, including, but not limited to, rendering care and services in a safe and beneficial manner.

61.    Defendants owed a duty to assist all residents, including CHARLES E. EDWARDS, in attaining and maintaining the highest level of physical, mental, and psychosocial well-being.

62.    Defendants failed to meet the standard of care and violated its duty of care to CHARLES E. EDWARDS through mistreatment, abuse and neglect.   The negligence of Defendants, their employees, and consultants, includes, but is not limited to, one or more of the following acts and omissions:

a)     The failure to properly notify a doctor upon significant changes in CHARLES E. EDWARDS' condition;

b)     The failure to provide adequate therapeutic and rehabilitative services to maintain CHARLES E. EDWARDS' mobility and range of motion and to prevent contractures;

c)     The failure to respond to significant signs and symptoms of change in the condition of CHARLES E. EDWARDS;

d)     The failure to adequately and timely assess, monitor and/or treat the development and progression of pressure sores and infection in CHARLES E. EDWARDS;

e)     The failure to provide proper custodial care, and wound care and to prescribe and administer proper medication to prevent CHARLES E. EDWARDS' existing medical conditions to worsen to the point of becoming life-threatening;

f)     The failure to properly assess CHARLES E. EDWARDS for the risk of development of pressure sores and infections;

g)     The failure to properly assess CHARLES E. EDWARDS for the risk of falling;

h)     The failure to provide adequate supervision for CHARLES E. EDWARDS to prevent him from falling within the facility;

i)     The failure to protect CHARLES E. EDWARDS from falling within the facility;

j)     The failure to develop, implement, and update an adequate and appropriate resident care plan to meet the needs of CHARLES E. EDWARDS;